**Linda M. PAPER, Respondent,**

v.

**RENT–A–WRECK, A DIVISION OF WILLIAMS, INC., Relator.**

**No. C8–90–1186.**

Court of Appeals of Minnesota.

Nov. 20, 1990.

Review Denied Jan. 14, 1991.

Robert J. Tennessen, Timothy J. Nolan, Minneapolis, for relator.

Beverly Balos, University of Minnesota, Minneapolis, for respondent.

Considered and decided by WOZNIAK, C.J., and GARDEBRING and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Rent–A–Wreck obtained a writ of certiorari seeking review of the Minneapolis Commission on Civil Rights' determination that Rent–A–Wreck discriminated against respondent Linda Paper by refusing to rent her a car. We reverse.

## FACTS

Appellant Rent–A–Wreck, an auto rental company, requires rental applicants to provide either a major credit card or a verifiable work phone number and money deposit. With the exception of retirees, who are not required to provide work phone numbers, applicants who cannot meet these requirements are refused rentals. These requirements are consistent with Rent–A–Wreck's liability insurer's guidelines.

On June 10, 1988, respondent Linda Paper telephoned Rent–A–Wreck to rent a car. Paper had no major credit card, and when asked whether she had a work phone number, she replied that she was unemployed and was "on AFDC." Based upon Paper's inability to meet its rental requirements, Rent–A–Wreck refused to rent Paper a car and referred her to another car rental company.

Paper filed a discrimination charge with the Minneapolis Department of Civil Rights on June 20, 1988. The charge alleged Rent–A–Wreck refused to rent Paper a vehicle because of her status as a public assistance recipient in violation of Minneapolis, Minn., Code of Ordinances, § 139.40(h)(1) (1976), which prohibits discrimination with regard to public accommodations. The department determined probable cause existed. The Minneapolis Commission on Civil Rights (Commission) heard the case and found that Rent–A–Wreck discriminated against Paper, and ordered Rent–A–Wreck to provide a free rental vehicle to Paper for the value of $500, pay a $300 civil penalty to the City of Minneapolis, and implement less discriminatory rental requirements. Rent–A–Wreck appeals from this decision.

## ISSUE

Did the Commission err in concluding that Rent–A–Wreck's actions were discriminatory?

## ANALYSIS

This court's review of the Commission's decision is governed by Minn.Stat. § 14.69 (1988). On review, the decision may be reversed if it is "affected by * * * error of law" or "[u]nsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 14.69(d), (e).

The Minneapolis civil rights ordinance prohibits any person providing public accommodations:

(1) To fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public accommodations; or

(2) To discriminate against any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and quality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation and repair.

Minneapolis, Minn., Code of Ordinances § 139.40(h) (1976).

"Public accommodations" includes: all services or facilities, other than governmental, of any kind offered or located within the City of Minneapolis which are generally open or offered to the public or which generally solicit public patronage or usage, whether operated for profit or not.

Minneapolis, Minn., Code of Ordinances, § 139.20(w) (1976).

In analyzing discrimination cases, Minnesota has adopted the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Potter v. LaSalle*

*Court Sports & Health Club,* 384 N.W.2d 873, 875 (Minn.1986) (Title VII analysis applies to Minneapolis civil rights ordinance). This test consists of the establishment of a prima facie case of discrimination, an answer, and a rebuttal. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 441 (Minn.1983). The elements of a prima facie case vary according to the facts of each case. *Id.* at 442.

■ Paper's discrimination claim and the Commission's decision were based on a theory of disparate impact. In order to establish a case of disparate impact, the claimant must "demonstrate that a facially neutral * * * practice actually operates to exclude * * * a disproportionate number of members of the protected class." *Schlemmer v. Farmers Union Cent. Exch., Inc.,* 397 N.W.2d 903, 908 (Minn.App.1986) (citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 431–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971) (seminal case on disparate impact)). The claimant must provide evidence, normally in the form of statistics, showing a practice has a disparate impact on the claimant's protected class. *See New York City Transit Auth. v. Beazer,* 440 U.S. 568, 583, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979); *Schlemmer,* 397 N.W.2d at 908.

■ The evidence and the Commission's findings in this case do not support a prima facie case of disparate impact discrimination. The record shows no evidence that Rent–A–Wreck's practice of requiring a verifiable work phone number had an impact on public assistance recipients. Paper asks this court to take judicial notice of the fact that most public assistance recipients are unemployed. However, this fact was disputed by the parties and does not meet the criteria for judicial notice. *See* Minn. R. Evid. 201(b). As the evidence was insufficient to establish a prima facie case, the Commission erred in concluding that Rent–A–Wreck's requirement had a discriminatory impact on public assistance recipients.

While we conclude in this case that the evidence was insufficient to show disparate impact, we are mindful that providers of public accommodations must carefully craft the terms and conditions of accommodation availability to avoid discriminatory impact against groups protected by this ordinance or similar laws. Rent–A–Wreck and other public accommodations have a legitimate interest in protecting their property and ensuring a legal recourse against customers who damage their property. However, to the extent possible, business policies must further these interests based on non-discriminatory criteria.

Because we reverse the Commission on its finding of discriminatory impact, we decline to address other issues raised by Rent–A–Wreck on appeal.

## DECISION

The Commission erred in determining Rent–A–Wreck discriminated against Paper by refusing to rent her a car.

Reversed.

GARDEBRING, Judge (concurring specially).

I concur in the result in this case, but only because respondent provided no evidence of the percentage of public assistance recipients who are unemployed. I believe this evidence would demonstrate an extremely high correspondence between public assistance recipients and the unemployed.

That being so, a case of disparate impact could be established, particularly because a legitimate business need must be met through the least discriminatory practice. *See Schlemmer v. Farmers Union Central Exchange, Inc.,* 397 N.W.2d 903, 909 (Minn. App.1986) (employee may prevail by showing an alternative practice that the employer could use to achieve its desired end without having the illegal disparate impact).

It is certainly legitimate for Rent–A–Wreck to establish economic criteria for automobile rental. However, a practice determining existence, amount or regularity of income, or examining credit history would meet Rent–A–Wreck's needs with less discriminatory impact. There is simply

no nexus between *source* of income and economic reliability, and the focus on source of income is disallowed by the ordinance.